# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

LYNDA B. JARRELL
and TERRY D. JARRELL                                                      PLAINTIFFS

v.                                                    CIVIL ACTION NO. 2:18-cv-183-KS-MTP

SHELTER MUTUAL INSURANCE COMPANY                                           DEFENDANT

## ORDER

THIS MATTER is before the Court on Plaintiffs' Motion to Compel [49]. Having considered the parties' submissions and the applicable law, the Court finds that the Motion [49] should be granted in part and denied in part.

On January 17, 2018, Plaintiffs' house was damaged by a fire. Thereafter, Defendant Shelter Mutual Insurance Company ("Shelter") tendered a payment for less than the full benefits under Plaintiffs' homeowners insurance policy. In response, Plaintiffs' counsel sent a letter dated May 31, 2018, to Shelter's adjuster, Earl Haines, notifying him that Plaintiffs had retained counsel and demanding that Shelter pay the full policy benefits. *See* May 31, 2018, Letter [49-1]. In the letter, Plaintiffs' counsel argued that the photographs and inspections show the home to be a "Total Loss" under Mississippi law. *Id*. On August 6, 2018, Plaintiffs' counsel sent a follow-up letter to Haines updating him concerning new reconstruction estimates and again demanding payment of the full policy benefits. *See* August 6, 2018, Letter [57-6].

Plaintiffs filed this action in state court on September 19, 2018,[1] asserting breach of contract and bad faith claims against Shelter. Plaintiff alleges that Shelter wrongfully refused to pay the full amount owed under Plaintiffs' insurance policy.

---

[1] Shelter remove this action to federal court on October 23, 2018.

1

On June 10, 2019, Plaintiffs filed the instant Motion to Compel [49], asserting that Shelter refuses to produce certain documents which were generated after Shelter received the May 31, 2018, letter from Plaintiff's counsel. Plaintiffs argue that Shelter refuses to produce this information "[d]espite the plain language of the Case Management Order [11] requiring the Defendant to produce the Claims Files." Plaintiffs also argue that Shelter had a continuing duty to investigate and evaluate the claim even after Plaintiffs retained counsel and filed suit and that they may discover and offer evidence from Shelter's pre- and post-suit claim evaluation process. Additionally, Plaintiffs assert that, after providing a privilege log, Shelter has produced previously withheld information. Plaintiffs argue that Shelter should not be allowed to selectively produce information generated after it received the May 31, 2018, letter. In response, Shelter asserts that the withheld information was created in anticipation of litigation and is protected by the work-product doctrine.

First, the Court will address Plaintiff's argument that the Case Management Order [11] requires disclosure of the entirety of the claims file. In the Case Management Order [11], the Court directed as follows: "As the claims file is a central component of the case, the court directs Defendant Shelter Mutual Insurance Company to produce the file within 30 days." *See* Order [11] at 2. The Court, however, also stated that "[i]f Defendant withholds any records from the file, same shall be identified on a privilege log as required by the Court rules." *Id*. Clearly, the Court recognized that Defendant could withhold information based on claims of privilege or work-product protection. The Court did not—at the outset of this action and without any factual or legal determination—order either party to produce privileged or otherwise protected information.

Plaintiff also argues that, because Shelter had a continuing duty to investigate and evaluate their claim for insurance benefits after they retained counsel and filed suit, they are entitled to the entirety of Shelter's claim file. Policyholders, however, "cannot rest solely on their bad faith claim to justify unlimited access to the defendant's claim file." *Miller v. Favre*, 2012 WL 6212793, at *2 (M.D. La. Oct. 22, 2012). "An insurance 'claims file' is not by definition privileged in its entirety and may contain much that is not subject to any privilege. Conversely, a privileged document does not necessarily lose its privileged status simply by being housed in a claims file." *BG Real Estate Servs. v. Am. Equity Ins. Co.*, 2005 WL 1309048, *8 (E.D. La. May 18, 2005). Thus, the Court must determine whether the withheld information is protected by the work-product doctrine.

The work-product doctrine is governed by Fed. R. Civ. P. 26(b)(3), which states, in part, that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). "The work product doctrine does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Liberty Mutual Ins. Co. v. Tedford*, 644 F. Supp. 2d 753, 764 (N.D. Miss. 2009). The work-product doctrine only protects materials that were prepared in anticipation of litigation. Documents prepared in the ordinary course of business or that would have been created in similar form irrespective of the litigation are not protected as work product.

"Documents created by the insurer or its representative tend not to be protected by the work product doctrine if they were prepared as a more or less routine investigation of a possible resistible claim." *Kansas City Southern Ry. Co. v. Nichols Const. Co. LLC*, 2007 WL 2461014,

at *5 (E.D. La. Aug. 27, 2007) (citation and internal quotation omitted). Thus, an important question is when did Shelter shift from investigating the claim to anticipating litigation. *OneBeason Ins. Co. v. T. Wade Welch & Assocs.*, 2013 WL 6002166, at *4 (S.D. Tex. Nov. 12, 2013).

A bright-line rule has not been established in the Fifth Circuit for determining when an insurer anticipates litigation. The United States Court of Appeals for the Fifth Circuit has stated that litigation pertaining to insurance coverage is appropriately anticipated from the date an insurer has a "solid basis to question the . . . insurance claim." *Dunn v. State Farm*, 927 F.2d 869, 875 (5th Cir. 1991). "[I]n an insurance dispute, the question of whether the documents are work product often depends on whether the insurer can point to a definite shift from action in its ordinary course of business to action in anticipation of litigation." *OneBeacon*, 2013 WL 6002166, at *5 (citation and internal quotations omitted).

The Court must also consider the purpose for which the documents at issue were created. If the "primary motivating purpose" in creating the documents was to aid possible future litigation, then the work-product doctrine applies. *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981). The Court, however, notes that "insurance companies are in the business of conducting, investigating, and evaluating claims against its policies." *Kansas City Southern*, 2007 2461014, at *4. Shelter has the burden of establishing that the information at issue is work product. *Hodges, Grant & Kaufman v. U.S.*, 768 F.2d 719, 721 (5th Cir. 1985).

Shelter argues that it began to anticipate litigation on May 31, 2018, when it received a letter from Plaintiffs' counsel, which stated, in part: "If we have heard nothing from your company within ten (10) days from the date of this letter we will assume that you desire suit to be filed." *See* May 31, 2018, Letter [49-1]. Certainly, it was reasonable for Shelter to anticipate

4

litigation as a result of this letter. The inquiry, however, does not end merely because Shelter could have anticipated litigation. The letter did more than threaten litigation; it conveyed information relevant to an evaluation of Plaintiff's insurance claim.[2]

The Court must consider the primary motivating purpose behind the creation of the withheld information. In its Response [58], Shelter divides the withheld information into four categories. The first category[3] consists of correspondence between Earl Haines (the claim adjuster) and Marshall Cartledge (Haines's supervisor) dated August 3 and August 15, 2018, and a note by Shelter's property specialist, Kent Peterson, dated June 13, 2018. Shelter asserts that these messages and notes were created in response to Plaintiffs' May 31, 2018, letter and, thus, were created in anticipation of litigation.

The second category consists of a note by Haines dated August 15, 2018.[4] Shelter asserts that this note was created in response to Plaintiffs' August 6, 2018, letter. The third category consists of a note by Haines dated August 20, 2018.[5] Shelter asserts that this note was created in response to Haines telephone conversation with Plaintiffs' counsel on the same date. The fourth category consists of eleven messages and notes created by Shelter employees after Plaintiffs filed

---

[2] Among other things, the letter stated that Shelter had failed to specify what parts of the home were reusable, provided information indicating that the home's existing pillars could not be used to rebuild the home, and invited Shelter to conduct further inspection.

[3] The first category consists of information from documents which are bates numbered Shelter-849, 873, and 876.

[4] This note is found on a document which is bates numbered Shelter-877.

[5] This note is found on a document which is bates numbered Shelter-878.

5

suit.[6] According to Shelter, these messages and notes were created primarily by members of its legal department and concern Plaintiffs' complaint and preparing the file for litigation.

Concerning the first three categories of information, Shelter has not met its burden of establishing that the information is protected by the work-product doctrine. Shelter argues that because this information was created in response to letters sent by Plaintiffs' counsel and a telephone conversation with Plaintiffs' counsel, the information was created in anticipation of litigation. This conclusory statement is not enough to show that the work-product doctrine should apply. The letters at issue did more than threaten litigation. As previously mentioned, the May 31, 2018, letter stated that Shelter had failed to specify what parts of the home were reusable, provided information indicating that the home's existing pillars could not be used to rebuild the home, and invited Shelter to conduct further inspection, and the August 6, 2018, letter updated Shelter concerning new reconstruction estimates. Additionally, as thoroughly discussed in Shelter's Motion to Dismiss [52] and supporting Memorandum [53], the conversation between Haines and Plaintiffs' counsel on August 20, 2018, concerned much more than the threat of litigation.[7]

Shelter provides no indication that the withheld information would not have been created in the ordinary course of business. Shelter has not established that the information was created to aid possible future litigation instead of being created as part of the investigation and evaluation of the insurance claim. Additionally, there is no indication that any attorney was involved in the creation of this information. Although the involvement of an attorney is not

---

[6] The fourth category consists of information from documents which are bates numbered Shelter-850, 851, 856, and 878.

[7] For example, Haines explained to Plaintiffs' counsel that he believed that the "whole left side of the house" remained usable. *See* Transcript [53-3].

dispositive, courts consider the "highly relevant factor" of whether counsel was retained and counsel's involvement in the generation of the document at issue. *Shaw Grp., Inc. v. Zurich Am. Ins. Co.*, 2014 WL 1784051, at *11-13 (M.D. La. May 5, 2014); *OneBeacon*, 2013 WL 6002166, at *4; *Kansas City Southern*, 2007 2461014, at *5. Thus, Shelter shall produce the previously withheld information in the first three categories.

Concerning the fourth category of information, Shelter has met its burden of establishing that the information is protected by the work-product doctrine. Shelter explains that this information was created after suit was filed and addresses Plaintiffs' complaint and the preparation of the file for litigation. Shelter has established that the primary motivating purpose for creating the information was to aid possible future litigation. Thus, Shelter need not produce withheld information in the fourth category.

IT IS, THEREFORE, ORDERED that:

1. Plaintiffs' Motion to Compel [49] is GRANTED in part and DENIED in part.

2. On or before August 2, 2019, Shelter shall produce the previously withheld information created on June 13, August 3, August 15, and August 20, 2018.

3. Except as directed herein, discovery remains stayed pending further order from the Court.

SO ORDERED this the 26th day of July, 2019.

> s/Michael T. Parker
> UNITED STATES MAGISTRATE JUDGE