IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

LYNDA B. JARRELL
and TERRY D. JARRELL                                                    PLAINTIFFS

v.                                                     CIVIL ACTION NO. 2:18-cv-183-KS-MTP

SHELTER MUTUAL INSURANCE COMPANY                                        DEFENDANT

## ORDER

THIS MATTER is before the Court on Defendant's Motion to Dismiss for Discovery Violations [52], which the Court construes as a motion for sanctions. Having considered the parties' submissions and the applicable law, the Court finds that the Motion [52] should be granted in part and denied in part.

On January 17, 2018, Plaintiffs' house was damaged by a fire. Plaintiffs filed this action in state court on September 19, 2018,[1] asserting breach of contract and bad faith claims against Shelter Mutual Insurance Company ("Shelter"). Plaintiff alleges that Shelter wrongfully refused to pay the full amount owed under Plaintiffs' insurance policy.

Before filing suit, Plaintiffs' counsel had multiple conversations with Shelter's claim adjuster, Earl Haines. These conversations took place on April 17, 2018, June 19, 2018, and August 20, 2018. Plaintiffs' counsel surreptitiously recorded his conversation with Haines on August 20, 2018. As previously mentioned, Plaintiffs filed suit on September 19, 2018.

Plaintiffs produced their initial disclosures on January 4, 2019. *See* Notice [10]. The August 20, 2018, recording was not mentioned in the disclosures. On February 12, 2019, Shelter

---

[1] Shelter removed this action to this Court on October 23, 2018.

1

propounded its first set of interrogatories. *See* Notice [12]. Included was Interrogatory No. 9, which stated as follows:

> State whether or not you, your attorney, anyone acting on your behalf or any other person has obtained any statement (whether signed or otherwise adopted by the person making it, or a stenographic, mechanical, electrical, or other recording, or a transcription) from any person concerning any occurrence or allegation or alleged damages which is a subject of this suit and, if the answer is in the affirmative, please identify each and every person giving such statement and the custodian of the statement.

On March 19, 2019, Plaintiffs answered Interrogatory No. 9 as follows:

> Objection is made to Interrogatory No. 9 as the same would invade the work product and work efforts of Plaintiff's attorneys. Plaintiffs personally have not obtained any written statements from anyone, expect those produced in discovery and already provided to Defendants and their attorneys from contractors, engineers and other person acting on behalf of Plaintiffs.

*See* Interrogatory Responses [53-5] at 7-8.

Plaintiffs did not provide a privilege log along with their interrogatory responses to indicate that records were withheld. On May 2, 2019, Shelter sent a good faith letter to Plaintiff pointing out that Plaintiffs' response mentioned only written statements and requesting "the identity of any other recorded statements that you, as their attorney, or anyone else on their behalf may have obtained." *See* Good Faith Letter [53-6] at 1-2. According to Shelter, Plaintiffs' counsel "verbally assured defense counsel that he was not withholding anything under privilege." *See* Shelter's Brief [53] at 8.

Plaintiffs deposed Haines and his supervisor Marshall Cartledge on May 30, 2019. After completing these depositions, Plaintiffs provided Shelter a recording of the August 20, 2018, conversation between Plaintiffs' counsel and Haines. Plaintiff supplemented their response to Interrogatory No. 9, stating, in part, that "[n]o privilege is claimed as to this recorded

conversation and the same will be produced subsequent to the deposition of Earl Haines." *See* Supplemental Interrogatory Responses [53-9].

In its Motion [52], Shelter argues that Plaintiffs were required to produce the recording as part of their initial disclosures pursuant to Fed. R. Civ. P. 26. Rule 26 states, *inter alia*, that a party "must, without awaiting a discovery request, provide to the other parties: . . . a copy—or description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment . . . ." Fed. R. Civ. P. 26(a)(1)(A)(ii).

Additionally, Shelter argues that Plaintiffs were required to disclose the existence of the recording in response to Interrogatory No. 9. Shelter also argues that Plaintiffs had a duty to supplement their initial disclosures and their interrogatory responses in a timely manner pursuant to Rule 26(e)(1) by disclosing the existence of the recording.

This Court has previously held that a recording which constituted substantive evidence, such as the one at issue, should have been disclosed prior to depositions. *See Mason v. T.K. Stanley, Inc.*, 229 F.R.D. 533 (2005). The Court stated as follows:

> With absolutely no warning, an unauthenticated and previously-unidentified tape was sprung on an unsuspecting witness who had absolutely no chance for preparation. Even a witness honestly attempting to recall events truthfully would be rattled by such a display. At a minimum …, the exercise violated the spirit of *Chiasson* as embodied in that Court's statement that 'the federal rules promote broad discovery so that all relevant evidence is disclosed as early as possible, making a trial less a game of blind man's bluff and more a fair contest.'

*Id*. at 536 (citing *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993)).

In their Response [63], Plaintiffs concede that they did not follow the procedure as set forth in *Mason*. According to Plaintiffs, their counsel mistakenly believed it was proper to

3

withhold the recording until after the depositions. Plaintiff also assert that their counsel "does not seek to avoid any ramification imposed by the Court on that issue." [63] at 7. Plaintiffs, however, argue that Shelter's requested relief, specifically dismissal of their claims, is not warranted.

Rule 37(c)(1) states as follows:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. Pro 37(c)(1).

Rule 37(b)(2)(A)(i)-(vi), which is referenced in Rule 37(c)(1), allows for orders (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party.

When applying Rule 37, courts consider the following factors: (1) the explanation for the failure to identify the evidence; (2) the importance of the evidence; (3) potential prejudice in allowing the evidence; and (4) the availability of a continuance to cure such prejudice. *City of Hattiesburg v. Hercules, Inc.*, 2016 WL 1090610, at *1 (S.D. Miss. Mar. 18, 2016) (citing *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004)).

The purpose of Rule 37(c)(1) is to prevent ambush, resulting in surprise or prejudice, from undisclosed or late disclosed evidence. *Reed v. Iowa Marine and Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994). "The sanctions it enumerates are not exclusive and arbitrary, but flexible, selective, and plural, and the district court may, within reason, use as many and as varied sanctions as are necessary to hold the scales of justice even." *Jonibach Mgmt.. Trust v. Wartburg Enterprises, Inc.*, 136 F. Supp. 3d 792, 808 (S.D. Tex. 2015) (internal quotations and citation omitted). "Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-64 (1980). Generally, however, courts should punish parties no more harshly than is necessary to vindicate the injury inflicted by the particular misbehavior at issue. *Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 294 (5th Cir. 1997).

Shelter argues that there was no justification for Plaintiffs' failure to timely produce the recording. Plaintiffs argue that their counsel had a genuine, but mistaken, belief that the recording could be produced following the depositions. Counsel's ignorance of the law does not constitute substantial justification. *See Griffin v. Aluminum Co. of America*, 564 F.2d 1171, 1173 (5th Cir. 1977) ("Ignorance of his obligations under the Federal Rules does not excuse his default"). Additionally, a genuine belief that production of the recording could be delayed does not justify purposefully misleading Shelter about the existence of the recording prior to the depositions.

The Court finds that Shelter was prejudiced by Plaintiffs' failure to timely produce the recording. The recorded conversation between Haines and Plaintiff's counsel concerned an issue of importance to this case, what and when information concerning the home's "usable remnants"

was conveyed to Plaintiffs by Shelter. The testimony of Haines and Cartledge, along with the recording, reveals that there was confusion concerning this issue. As an example, when Haines was asked whether he explained what usable remnants of the home remained, he stated, "I don't know if you and I had that conversation. But I believe when I sent that estimate out to your office, we talked about it about what I was doing." *See* Haines Deposition Excerpts [53-7] at 2. As another example, after observing Haines's deposition, Cartledge (Haines's supervisor) testified that he was unaware of any effort by Shelter to contact Plaintiff's counsel prior to September 19, 2018. *See* Cartledge Deposition Excerpts [53-8] at 3.[2] Shelter was deprived of an opportunity to fully prepare its employees, Haines and Cartledge, for their depositions. The Court finds that sanctions are warranted.

In their Motion [52], Shelter argues that the Court should dismiss this action. As an alternative, Shelter argues that the Court should (1) strike Plaintiffs' extra-contractual, bad faith pleadings; (2) prohibit Plaintiffs from using the recording and the depositions of Haines and Cartledge; (3) order Plaintiffs to pay the reasonable expenses, including attorney's fees, associated with preparing the instant Motion, attending the depositions of Haines and Cartledge, and attending the settlement conference.

When considering the imposition of the sanction of dismissal, courts consider (1) whether the violation resulted from bad faith or willful conduct, (2) whether the violation is attributable to the client, (3) whether the opposing party has been substantially prejudiced, and (4) whether a less drastic sanction would achieve the desired deterrent effect. *Bluitt v. Arco Chemical Co.*, 777

---

[2] Additionally, during their depositions, Haines and Cartledge specifically stated that Haines did not address the issue of usable remnants with Plaintiffs or their counsel. The testimony, however, may have been referring to the lack of written statements concerning usable remnants. *See* [53-7] at 2; [53-8] at 5.

F.2d 188, 190-91 (5th Cir. 1985). "[D]ismissal is a severe sanction that implicates due process." *FDIC v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994).

While the Court does not condone the belated production of the recording, the Court finds that dismissal of this action is not warranted in this case. Shelter argues that the recording undermines the allegations found in Plaintiffs' complaint. A Rule 37 motion, however, is not the proper method to test the merits of Plaintiffs' claims. Additionally, the prejudice caused by Plaintiffs' failure to timely produce the recording can be cured by precluding Plaintiffs from using the deposition testimony of Haines and Cartledge and allowing their depositions to be retaken. *See*, *Mason*, 229 F.R.D. at 537. The Court also finds that the desired deterrent effect can be achieved by a monetary sanction. *See Griffin v. Javeler Marine Services, LLC*, 2016 WL 1559170, at *5 (W.D. La. Apr. 18, 2016).

The Court finds that Shelter should be awarded the reasonable attorney's fees incurred in attending the depositions of Haines and Cartledge on May 30, 2019, and preparing the instant Motion. Reasonable attorney's fees are determined by calculating the "lodestar" by multiplying the reasonable hours expended by a reasonable hourly rate. *League of United Latin Am. Citizens No. 4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997). A court must determine whether the total number of hours claimed was reasonable and whether specific hours claimed were reasonably expended. *Id*. After calculating the hours reasonably expended, a court must determine a reasonable hourly rate "based on the prevailing market rates in the relevant community." *Assoc. Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 347, 379 (5th Cir. 1990) (quotations and citation omitted). In making these considerations, a

court should consider the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[3]

Along with its Motion [52], Shelter submitted an affidavit from its counsel stating that the attorney's fees incurred in preparing the Motion [52] include 31 hours at a rate of $150.00 per hour and 9 hours at a rate of $175.00 per hour for a total amount of $6,225.00. *See* Best Affidavit [53-10]. The Court is familiar with the prevailing rates in the community and finds that $150.00 per hour and $175.00 per hour are very reasonable hourly rates.

Regarding the hours expended, "[t]he Fifth Circuit has emphasized that district courts should reduce attorneys' fees awards where attorneys do not exercise billing judgment, i.e., exclude 'unproductive, excessive, or redundant hours.'" *Brown v. Ascent Assurance, Inc.*, 191 F. Supp. 2d 729, 733 (N.D. Miss. 2002) (quoting *Walker v. United States Dep't. of Hous. and Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996)). Hours which "are excessive, redundant, or otherwise unnecessary," or which result from the case being "overstaffed," are not hours "reasonably expended" and are to be excluded from the lodestar calculation. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

The Court finds that the number of hours expended exceed what is reasonable under the circumstances. After reviewing the record and applicable law, including the *Johnson* factors, the Court finds that 16 hours at a rate of $150.00 and 4 hours at a rate of $175.00 are reasonable

---

[3] The *Johnson* factors include: (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

amounts of time at a reasonable rate to prepare the instant Motion. Thus, the Court finds that Shelter should be awarded $3,100.00.

In his affidavit, Shelter's counsel also states that the attorney's fees incurred for two attorneys to travel to and attend the depositions of Haines and Cartledge include 37 hours at a rate of $175.00 per hour for a total of $6,475.00. The Court finds that it is not reasonable to award this amount as a sanction. Instead, the Court finds that Shelter should be awarded attorney's fees incurred for one attorney to attend (excluding travel) the depositions of Haines and Cartledge.

IT IS, THEREFORE, ORDERED that:

1. Defendant's Motion to Dismiss for Discovery Violations [52], construed as a motion for sanctions, is GRANTED in part and DENIED in part.

2. Plaintiffs are precluded from using the testimony from the depositions of Earl Haines and Marshall Cartledge taken on May 30, 2019, to supply evidence on a motion, at a hearing, or at a trial.

3. Plaintiffs are granted leave to retake the depositions of Earl Haines and Marshall Cartledge after discovery resumes.

4. Plaintiffs and their counsel, jointly and severally, shall pay to Defendant, through Defendant's counsel, the sum of $3,100.00 in sanctions on or before August 30, 2019.

5. On or before August 8, 2019, Defendant's counsel shall file an affidavit and detailed itemization of fees incurred for each attorney to attend the depositions of Earl Haines and Marshall Cartledge. The itemization of fees must separate time billed for travel and time billed for actual participation in the depositions. Thereafter, the Court will award additional monetary sanctions by separate order.

6. All other relief requested in the Motion to Dismiss for Discovery Violations [52] is denied.

SO ORDERED this the 1st day of August, 2019.

s/Michael T. Parker
UNITED STATES MAGISTRATE JUDGE