IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

LYNDA B. JARRELL
and TERRY D. JARRELL                                                                  PLAINTIFFS

v.                                                          CIVIL ACTION NO. 2:18-cv-183-KS-MTP

SHELTER MUTUAL INSURANCE COMPANY                                        DEFENDANT

## ORDER

THIS MATTER is before the Court on Defendant's Motion [55] to disqualify William H. Jones, one of Plaintiffs' attorneys. Having considered the parties' submissions, the record, and the applicable law, the Court finds that the Motion [55] should be granted.

On January 17, 2018, Plaintiffs' house was damaged by a fire. Plaintiffs filed this action in state court on September 19, 2018,[1] asserting breach of contract and bad faith claims against Shelter Mutual Insurance Company ("Shelter"). Plaintiffs allege that Shelter wrongfully refused to pay the full amount owed under Plaintiffs' insurance policy.

Before suit was filed, Plaintiffs' counsel, William H. Jones,[2] and Shelter's claim adjuster, Earl Haines, exchanged written correspondence on several occasions. Jones and Haines also had multiple telephone conversations. These conversations took place on April 17, 2018, June 19, 2018, and August 20, 2018. As previously mentioned, Plaintiffs filed suit on September 19, 2018.

In the instant Motion [55], Shelter argues that, as a result of the telephone conversations between Jones and Haines, Jones is a necessary witness and, therefore, must be disqualified from

---

[1] Shelter removed this action to this Court on October 23, 2018.

[2] Plaintiffs are also represented by Michael V. Ratliff.

1

serving as Plaintiffs' counsel. As a substantive motion, Shelter's disqualification motion must be decided under federal law. *See F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995). "'[D]isqualification cases are governed by state and national ethical standards adopted by the court.'" *Id*. (quoting *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992)). Federal courts consider ethical standards set forth in the local rules, state rules, model rules, and model code. *Id*. "All of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." *Id*. at 1314.

The Rules of the Southern District of Mississippi specifically adopt the Mississippi Rules of Professional Conduct. The Mississippi Rules of Professional Conduct are identical to the American Bar Association's Model Rules of Professional Conduct in all relevant aspects. *United States v. Starnes*, 157 Fed. App'x. 687, 693-94 (5th Cir. 2005). Mississippi Rule of Professional Conduct 3.7 provides as follows:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

   (1) the testimony relates to an uncontested issue;

   (2) the testimony relates to the nature and value of legal services rendered in the case; or

   (3) disqualification of the lawyer would work substantial hardship on the client.

Miss. R. Prof. Conduct 3.7.

Shelter asserts that after its inspection of Plaintiffs' house, it determined that the January 17, 2018, fire partially destroyed the house and that there remained portions of the house which were usable—"usable remnants." Along with a letter dated April 13, 2018, Shelter tendered a payment to Plaintiffs covering the partial loss. Plaintiffs, however, did not accept this payment.

They maintained that the house was a total loss and that Shelter should have tendered policy limits.

On September 19, 2018, Plaintiffs filed their Complaint [1-2], asserting breach of contract and bad faith claims. Shortly thereafter, Shelter tendered a payment in excess of the policy limits. *See* Defendant's Brief [56] at 4; Plaintiffs' Brief [62] at 15. Thus, Plaintiffs have been paid the full amount under their contract claims. Plaintiffs, however, also seek extra-contractual damages.

Shelter argues, *inter alia*, that Plaintiffs have placed at issue the questions of what information about the house's usable remnants was conveyed to Plaintiffs by Shelter and when that information was conveyed. Shelter argues that this is a critical issue and observes that Plaintiffs allege that they repeatedly requested information concerning the house's usable remnants, but Shelter refused to provide such information. *See* Complaint [1-2] at 5, 7, 10, 11. As an example, Plaintiffs allege the following: "Defendants have failed and refused to identify what parts of the remaining ruins of their home are susceptible to reasonable repair. This request has been made numerous times without response." *Id*. at 11.

Shelter asserts that, contrary to Plaintiffs' allegations, Haines conveyed information about the house's usable remnants to Jones during their conversations. Shelter asserts that Plaintiffs' claims require proof that Shelter failed to respond to Plaintiffs' pleas for information concerning usable remnants and Shelter's defense requires proof that Haines conveyed this information to Jones. Shelter argues that Jones must provide testimony concerning his conversations with Haines.

Shelter points out that, during his deposition, Haines rebutted Plaintiffs' allegations. During Haines's deposition, the following exchange occurred.

3

| | | |
|---|---|---|
| Q: | | My question is, you didn't respond back and say it's all in the estimate, did you? |
| A: | | I believe you and I talked about that back on – in April, of what I was saying – saving. |
| Q: | | When did we talk in April? |
| A: | | When I sent that estimate over to you. |
| Q: | | Um -- |
| A: | | When they first got the original check, what I had. |
| Q: | | So I write this letter on May 31 and you don't respond by saying it's all in the estimate, remember we talked about it, do you? |
| A: | | I cannot remember. I do not recall that. But I believe you and I talked about what was savable back in April. |

*See* Haines Deposition Excerpts [55-2] at 4.

Jones and Haines spoke again on August 20, 2018.[3] Jones surreptitiously recorded the August 20, 2018, conversation and produced the recording to Shelter on May 30, 2019, following the depositions of Haines and his supervisor Marshall Cartledge.[4] During the conversation, Jones and Haines discussed usable remnants. *See* Transcript [53-3]. Shelter argues that Jones's testimony concerning his conversations with Haines is relevant and unobtainable elsewhere and that the exceptions enumerated in Rule 3.7 do not apply.

In response, Plaintiffs deny Haines's allegation that he and Jones discussed usable remnants prior to August 20, 2018. Plaintiffs argue that Haines provided testimony during his

---

[3] Jones and Haines also had a conversation on June 19, 2018. Haines testified that, during the conversation, he inquired about the status of the house's demolition. *See* [55-2] at 3, 5.

[4] The Court previously determined that Plaintiffs' act of withholding the recording until after the depositions of Haines and Cartledge was sanctionable. Among other sanctions, the Court precluded Plaintiffs from using the depositions of Haines and Cartledge to supply evidence on a motion, at a hearing, or at trial. *See* Order [75].

deposition which contradicts his allegation concerning his conversation with Jones. Plaintiffs point to the following exchange:

> Q: Okay. You did not directly respond to what may be a usable remnant in your – in responding to this letter, did you?
>
> A: No, sir.

*See* Haines Deposition Excerpts [60-4] at 9.

When read in context, however, it appears that Haines meant he did not describe *in writing* what usable remnants remained. Plaintiff also point to the following exchange:

> Q: Okay. Now, when Mr. Watts asked you a minute ago about what usable remnants remained --
>
> A: Uh-huh.
>
> Q: Do you remember that question?
>
> A: Yes, sir.
>
> Q: And you were – you just blurted it our right away, floor joists, stud walls, some of the porch, exterior siding. Do you remember that a minute ago?
>
> A: Yes, sir.
>
> Q: Is there any reason in the world you couldn't have told me that in response to either one of my letters?
>
> A: I don't think – I don't think like that.

[60-4] at 17-18. As the Court previously pointed out in its Order [75] awarding sanctions against Plaintiff, Haines's testimony reveals that there was confusion concerning the issue of usable remnants. The implication from the testimony cited by Plaintiffs is that Jones and Haines never discussed usable remnants. The record, however, demonstrates that Haines discussed usable remnants with Jones prior to his deposition. *See* Transcript [53-3]. Thus, the following questions

remain: What information about the house's usable remnants was conveyed to Plaintiffs by Shelter, and when was the information conveyed?[5]

Additionally, Plaintiffs argue that the April 17, 2018, conversation occurred before they received Shelter's letter offering payment, and as a result, it would have been impossible for Jones and Haines to discuss usable remnants. Haines, however, testified that the letter had been prepared by the time he spoke to Jones on April 17, 2018. *See* [60-4] at 2. Thus, the timing of the conversation in relation to the timing of Plaintiffs' receipt of the letter offering payment does not undermine Haines's testimony. By the time he spoke to Jones on April 17, 2019, Haines knew what information the letter contained and whether he believed there were usable remnants, and he could have conveyed that information, as his testimony suggests.

Plaintiffs also cite to a letter their counsel sent to Haines on August 6, 2018. The letter states, in part:

> It is now August 6, 2018. You have not responded at all to my letter of May 31, 2018, although I do understand and acknowledge that you have had some illness in your family. Your company has not indicated what parts of the home it maintains were 'usable.' This loss was January 17, 2018. What portions of the structure does you company maintain is 'usable' in view of the photographs, and the engineering reports?

*See* August 6, 2018, Letter [60-6].

While this letter supports Plaintiffs' allegations that Haines did not provide information concerning usable remnants, it is not sufficient to vitiate the need for Jones's testimony

---

[5] Plaintiffs also claim that during Haines's deposition he appears to say that he does not remember the April 17, 2018, telephone call. Plaintiffs cite to page 57 of Haines's deposition. Plaintiffs, however, did not provide this portion of the deposition, and the Court is unable to determine whether this alleged testimony actually undermines Haines's other testimony. Plaintiffs also cite to testimony by Haines's supervisor, but the Court finds such testimony does not vitiate the need for Jones's testimony concerning the contents of his conversations with Haines.

6

concerning the contents of his conversations with Haines.  Much of the questioning of Haines during his deposition concerned whether he provided written responses to Plaintiffs' correspondence.  Even if Haines discussed usable remnants with Jones on April 17, 2018, it would have been reasonable for Plaintiffs to later request a written explanation from Shelter concerning usable remnants.

The finder of fact should consider the testimony of both Haines and Jones concerning the contents of their conversation.  Jones's testimony is relevant and necessary for Plaintiffs to show what information was conveyed between Haines and their counsel.  Jones is the only witness who can testify on behalf of Plaintiffs on this issue, and his testimony is needed for the zealous advancement of Plaintiffs' claims. *See Liberty Mut. Ins. Co. v. Tedford*, 644 F. Supp. 2d 753, 766-67 (N.D. Miss. 2009); *Adeniyi-Jones v. State Farm*, 2016 WL 3551486 (E.D. Penn. June 30, 2016).

Additionally, none of the exceptions to Rule 3.7 apply.  As Plaintiffs made clear in their response, this is a contested issue.  Plaintiffs state that Haines's allegations "are false, if not outright frivolous." *See* [60] at 1.  The testimony does not relate to the nature and value of legal services.  Finally, the Court does not find that Plaintiffs will endure a substantial hardship by the disqualification of Jones.  Plaintiffs have also been represented by Michael Ratliff from the outset of this case.  Ratliff is more than capable of prosecuting Plaintiffs' claims moving forward, and Plaintiffs have not established that they would suffer substantial hardship.

By so ruling, the Court in no way suggests, as does Plaintiff, that every lawyer involved in handling an insurance claim for a client is subject to disqualification.  "[A]pplication of ethical rules, such as those involved in the instant case, requires 'painstaking analysis of the facts and precise application of precedent.'" *F.D.I.C.*, 50 F.3d at 1313 (quoting *Brennan's Inc. v.*

7

*Brennan's Restaurants, Inc.*, 590 F.2d 168, 173-74 (5th Cir. 1979)).  This case presents unusual circumstances.  The insurance claim was eventually paid, but bad faith claims remain and are premised in large part on communications between counsel and the adjuster.  The content of some of these communications is in dispute, and Jones's testimony is needed by both parties.

      IT IS, THEREFORE, ORDERED that Defendant's Motion to Disqualify William H. Jones [55] is GRANTED.

      SO ORDERED this the 26th day of August, 2019.

                                      s/Michael T. Parker
                                      UNITED STATES MAGISTRATE JUDGE